[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR DISBURSEMENT OF SECURITY DEPOSIT
This summary process action based on lapse of time came to this court on September 17, 1991. On September 25, 1991 the parties entered into a Stipulated Agreement. The plaintiffs filed a motion for disbursement of funds on December 17, 1991, the defendants an objection to the motion on December 26, 1991. An evidentiary hearing was held commencing January 23, 1992.
This case, and another bearing docket number CNNO 9109-2113 which was also settled by a stipulation on September 25, 1991, has been characterized by the antagonism of the parties, most notably Steve Lichtman and Eugene Schussheim.
In the stipulation in the instant case the parties agreed that the defendants would vacate the premises on November 3, 1991. It was further agreed that the defendants would deposit $2000 in certified funds with the Clerk's office of the Norwalk Housing Session by October 4. This amount served as a substitute security deposit to replace funds on deposit in the joint names of Steven Lichtman and Julie Spencer which Spencer released to Lichtman pursuant to the stipulation.
Among the other terms of the stipulation was an agreement that John Savino, the Housing Specialist who had worked out the stipulation with both parties, would inspect the premises on September 27, 1991 at 3:30 p.m. and inspect them again "for the security deposit" when the defendants vacated. Both parties agreed to be bound by his findings. The defendants waived their rights to "file a motion to stay, defenses to eviction and right of appeal." They were canvassed by the court as to their understanding of the stipulation.
There is no doubt that Sunday, November 3 was the date upon which the defendants were to vacate. The original writing of the stipulation read "November 4, 1991" and it was changed to "November 3, 1991" in red ink at the time of the court's canvas. CT Page 1867
In accordance with the agreement, the defendants deposited the money and John Savino inspected the premises on September 27, 1991.
The issue herein is whether or not the money held by the Housing Court can be released to the plaintiffs in consequence of the plaintiffs' claim that the premises were damaged by the tenants.
Connecticut General Statute section 47a-21 (d)(2) provides, inter alia, that at the termination of the tenancy, the landlord shall deliver to the tenant the full amount of the security deposit, or the balance after deduction for any damages suffered by the landlord by reason of the tenant's failure to comply with the tenant's obligations. The plaintiffs claim the full amount of the funds alleging at least $2000 worth of damage to the premises. The tenants claim no damage was done. They contend that John Savino failed to inspect the property on November 3 as they vacated and therefore, the plaintiffs cannot sustain their burden of proving the tenants responsible for the damage.
After hearing the testimony and observing the witnesses' demeanor and viewing the documents and photographs, the court finds the following facts. John Savino is employed by the State of Connecticut as a Housing Specialist Monday through Friday between the hours of 9 a.m. to 5 p.m. He is therefore unavailable for inspections on Sundays. Due to his duties at both the Stamford/Norwalk and Bridgeport Housing Sessions, Mr. Savino was unable to conduct his second inspection until Thursday, November 7, 1991 at 2:30 p.m.
At the time of the first inspection, Mr. Lichtman and Ms. Spencer were present. They were later joined by Laura Huff. (Judith Scanlon, a State's Attorney was also present because she was providing transportation for Mr. Savino through the relevant period; her presence is irrelevant to the matter at hand.) Mr. Savino found the overall condition of the premises good. He noted the following:
1. the living room sofa and rug were stained;
2. a tile was missing from the floor of the first floor bedroom spare room;
3. a red spot was located near the closet door on the rug of the downstairs bedroom;
4. the door of the master bedroom did not close properly; he did not recall any visible damage to the door: CT Page 1868
5. in a smaller bedroom the closet door was off the hinge;
6. a small tree outdoors was uprooted.
He advised the tenants to clean the carpets and sofa and replant the tree. He also advised they have the house professionally cleaned. Mr. Lichtman agreed. Ms. Spencer said that the premises were not "that bad in shape." He further advised the tenants to take photographs upon vacating and arrange to have a witness present should any question arise as to the condition of the premises when they vacated. Subsequently, he spoke with the defendants' attorney indicating that he would not be available for an inspection on Sunday but that photographs should be taken and witnesses present.
Between September 27 and November 3 Spencer learned that the defendants had pets. She visited the premises during that time after her realtor called to state that at an Open House on October 3 other realtors noted a strong urine smell. When Spencer visited the house she smelled urine especially in the office/bedroom but could not get a good view of the room at that time because there were packed boxes in front of the door and around the perimeter of the room. Although the lease did not permit pets Lichtman was carrying a dog in his arms and a cat was present at that time.
The court further finds that Julie Spencer arrived at the premises at noon on November 3. The house was locked; she saw no one and no one answered her calls and knocks. She waited three to four hours outside expecting to meet the tenants to obtain the keys from them. She called Mr. Schussheim who was in Long Island, and he advised her to hire a locksmith. She did so, gaining entrance to the house later that afternoon. She found damage to doors and damage to door moldings from animal scratches, a urine odor so "pungent" in one room that she had to leave it. She also noticed a stain on the rug. The living room couch and pillows were stained and smelled of urine; the master bedroom door damaged. In court she identified the pieces of carpeting that were stained and the couch pillow and cover as those she saw that day.
Richard Di Donato, a realtor who did not have the listing for the sale of the house, but who was a personal friend of the plaintiffs, confirmed Ms. Spencer's testimony concerning the events of November 3. He accompanied her and tried the doors and viewed the house after she gained admittance.
When Mr. Savino inspected on November 7, he encountered a strong smell of urine and saw that the carpet, throw rug and sofa had not been cleaned. The stains had not been removed. The door of the master bedroom "looked like it had been slammed or kicked:" and lacked a handle; the closet door was off its hinge. In another bedroom the door was dented as though slammed or hit below the CT Page 1869 knob. He saw a carpet rolled up in the basement and again noticed a "smell down there like urine." Ms. Spencer was upset as compared with her demeanor at the September 27 inspection and indicated that she would have been satisfied with the state of the premises as it had been then. The defendants were not present for this inspection. Mr. Savino, despite conceding that he lost his notes from the second inspection, made a credible witness.
Mark Mastropietro of Triple S went to the premises on November 4 in response to a call from the plaintiffs. He confirmed the strong urine odor, especially in the office bedroom and said he left the room because he "literally needed fresh air." As a manager of Triple S, and an employee of 13 years, he is experienced in restoration and cleaning of textiles. He subsequently attempted to clean the carpets and sofa, at a cost to the plaintiffs of $782.66. He did not have good results in cleaning the couch pillow. The area rug rolled upon the basement crawl space was beyond repair.
The plaintiffs paid $178.08 to the Interstate Locksmith Group to gain entry to the premises on Sunday, November 3. They paid $259.70 to Dustbusters to clean the premises, and $305.68 for filling the fuel tank, an obligation the tenants failed to perform as called for in paragraph 19 of the lease. The plaintiffs paid $848 to Migliaresi Landscaping for clean up of the lawn and the replanting of the uprooted plum tree, items which were the tenants' obligations under paragraph 3 of the their covenants. Spencer testified to additional expenses and estimates for repair work some of which were not admissible as hearsay evidence at this hearing. However, the court does not imply that these additional items may not be the subject of a subsequent lawsuit for damages. For the purposes of this motion, the court need find no damages in excess of $2000.
The defendants attempted to show that the aforementioned damages were caused by others, most notably Eugene Schussheim. There was no credible evidence given to cause the court to come to that conclusion. The defendants' testimony was not wholly credible. Both defendants testified there had been pets on the premises from time to time. They cared for cats and dogs belonging to their families in violation of the lease agreement.
Huff testified she left the premises sometime in the afternoon of November 3 before Lichtman left for good. Lichtman stated he left his keys in the house. However, Huff did not turn in her keys to anyone; in fact she believes she still has them. Her testimony was at times self-serving as when she stated that it was very important she live in a clean home. She noticed no urine smell and indicated she would not stay on the premises with an odor of urine. She did not recall a piece of carpet that looked as Exhibit B looked and never saw the stained sofa cushions or cover. She took no photographs when she vacated. CT Page 1870
Mr. Lichtman testified, as did Ms. Huff, that he was not told to remove stains from the sofa or carpets. He stated that Mr. Savino and Ms. Spencer were satisfied with the condition of the premises at the time of the first inspection. He took no photographs when he vacated.
For the foregoing reasons, the court finds that the plaintiffs have met their burden of proof by a preponderance of the evidence that the defendants damaged the premises in at least the amount of $2000. The court directs that the funds be released to the plaintiffs.
LEHENY, J.